UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

MYRON JESSIE,

          Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

          Defendants.
_____/

Case No. 2:22-cv-54

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections (MDOC) and the MDOC Mental Health Services department. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Hares, Harris, and Beaudrou: (1) Plaintiff's official capacity claims; (2) Plaintiff's claims for declaratory and injunctive relief against Defendants in their individual capacities; and (3) Plaintiff's claims for violations of MDOC policy. The following claims remain in the case: (1) Plaintiff's Eighth

Amendment verbal and sexual harassment claim against Defendant Harris; (2) Plaintiff's Eighth Amendment claims against Defendants Hares, Harris, and Beaudrou premised upon the denial of adequate mental health treatment; and (3) Plaintiff's state law claims against Defendants Hares, Harris, and Beaudrou.

Plaintiff has also filed three motions in this matter. For the reasons discussed below, the Court will deny as premature Plaintiff's motion for discovery. (ECF No. 7.) Plaintiff's motion for an extension of time to file an amended or supplemental complaint (ECF No. 8) will be denied without prejudice to Plaintiff's right to initiate a new lawsuit, should he wish to do so, raising his claims regarding the use of soft restraints on March 19, 2022. Finally, Plaintiff's motion to amend (ECF No. 10) will be granted to amend the docket to reflect the full names of the individual Defendants.

## Discussion

### I. Pending Motions

Plaintiff has filed a motion for discovery (ECF No. 7), a motion for an extension of time to file an amended complaint (ECF No. 8), and a motion to amend (ECF No. 10). The Court considers each motion in turn below.

#### A. Motion for Discovery (ECF No. 7)

Plaintiff has filed a motion for discovery, requesting that Defendants produce various documents pursuant to Rule 34 of the Federal Rules of Civil Procedure. (ECF No. 7, PageID.98.) Plaintiff's motion, however, is premature. No defendant has been served in this matter. After the parties are given an opportunity for mediation, the complaint is served, and at least one Defendant has entered an appearance, the Court will issue a case management order setting forth relevant dates and limits for discovery. Plaintiff may renew his motion at that time.

### B. Motion for Extension of Time (ECF No. 8)

Plaintiff has also filed a motion for an extension of time to amend or supplement his complaint to include claims stemming from a use of soft restraints that occurred on March 19, 2022. (ECF No. 8, PageID.101.) Plaintiff's instant complaint asserts Eighth Amendment deliberate indifference claims premised upon Defendants' failure to provide adequate mental health services to Plaintiff. Plaintiff does not indicate whether Defendants are the individuals who used the restraints against him. In any event, "unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of the PLRA). Thus, granting Plaintiff leave to amend or supplement his complaint to include claims regarding the use of soft restraints on March 19, 2022, would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of 28 U.S.C. § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. The Court, therefore, will deny Plaintiff's motion for an extension of time to file an amended or supplemental complaint (ECF No. 8) without prejudice to Plaintiff's right to initiate a new lawsuit, should he wish to do so, raising his claims regarding the use of soft restraints on March 19, 2022.

### C. Motion to Amend (ECF No. 10)

Finally, Plaintiff has filed a motion to amend his complaint to include the complete names of the individual Defendants he named when he filed his complaint: Unit Chief of Mental Health Mark Hares, Case Worker Mark Harris, and Psychiatrist Anthony Beaudrou. (ECF No. 10, PageID.105.) Because Plaintiff merely seeks to amend his complaint to fully identify these

3

Defendants, the Court will grant his motion to amend and direct the Clerk to amend the docket to reflect each Defendant's full name.

## II.  Factual Allegations

Plaintiff is presently incarcerated with the MDOC at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. The events about which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues the MDOC, the MDOC's Mental Health Services, and the following personnel at MBP: Unit Chief Mark Hares, Case Worker Mark Harris, and Psychiatrist Anthony Beaudrou. Plaintiff names Defendants in both their official and individual capacities. (ECF No. 1, PageID.1.)

Plaintiff alleges that his treatment relationship with Defendant Harris began in 2017 while he was incarcerated at MBP. (*Id.*, PageID.4.) During a Secure Status Outpatient Treatment Program (SSOTP)[1] group meeting, Defendant Harris told the group that "they could share or ask him relevant questions if they liked" during the remaining fifteen minutes. (*Id.*) Plaintiff was chosen to speak and informed Defendant Harris that some of the information Harris had given to him regarding his mental health treatment was inconsistent. (*Id.*) Defendant Harris shut him down with an embarrassed tone, telling Plaintiff that "he didn't care." (*Id.*) Plaintiff asked to be heard, stating that it was essential to his well-being, but Defendant Harris ignored him. (*Id.*) Plaintiff then "blacked out and kicked his chair as he left early," causing Defendant Harris to issue him a misconduct. (*Id.*)

---

[1] The SSOTP is a mental health program designed for those inmates who have been diagnosed as mentally ill and are "more violent in nature and need closer supervision than a 'normal' OTP prisoner." *See* https://council.legislature.mi.gov/Ombudsman/PrisonTerminology (last visited Sept. 28, 2022).

Plaintiff contends that he has tried to get Defendant Harris to take him seriously, but that Defendant Harris only asks him during their meetings if he is managing. (*Id.*) Regardless of the answer Plaintiff gives, Defendant Harris "is not receptive or sensitive to the woes" of Plaintiff. (*Id.*) Plaintiff characterizes Defendant Harris's behavior as rude, insensitive, callous, and nonchalant. (*Id.*) Plaintiff avers that Defendant Harris would sometimes tell him there was nothing he could do. (*Id.*) He alleges that Defendant Harris would often state that he would only do the bare minimum required by the state, even during "crisis situations where the Plaintiff was hospitalized for suicide attempts." (*Id.*)

On May 20, 2020, Plaintiff had a meeting with Defendants Harris and Hares. (*Id.*, PageID.4–5.) Defendant Harris waited for Defendant Hares to be "out of earshot" and then told Plaintiff, "You are a f***ing crybaby and if you need any favors in the future [you are] gonna have to eat my d*** for it!" (*Id.*, PageID.5.) This occurred after Plaintiff had asked that he be removed from Defendant Harris's caseload because of Defendant Harris's alleged deliberate indifference to his mental health. (*Id.*) Plaintiff became suicidal and eventually attempted suicide after being taunted and teased from inmates who overheard Defendant Harris's comment. (*Id.*) Plaintiff had previously confided in Defendant Harris that he is bisexual and "strongly feels [that is] what motivated that aggressive sexual advance." (*Id.*) Plaintiff filed a Prison Rape Elimination Act (PREA) complaint, but to no avail. (*Id.*)

Plaintiff tried to inform Defendant Hares about what had occurred during Hares's rounds, but Defendant Hares dismissed his concerns. (*Id.*) Plaintiff became extremely suicidal and began "blacking out from being teased for being gay." (*Id.*) Plaintiff began attempting suicide more frequently during these black out spells. (*Id.*) Plaintiff would be gassed and sprayed for having mental breakdowns and refusing to leave his cell after cutting or hanging himself. (*Id.*) He would

5

wake up in observation "not remembering a thing." (*Id.*) Plaintiff contends that the voices in his head "became louder and more frequent, threatening him and telling him to harm or kill himself or others." (*Id.*) Plaintiff would not be lucid during these fits of rage and would end up accruing misconducts. (*Id.*) Plaintiff avers that Defendant Harris would always deem him stable and lucid "at the moment of the misconduct being written even though he knew better." (*Id.*, PageID.6.) During that time, Plaintiff "was being treated with medication called Geodone for hearing voices and intense reactivity." (*Id.*)

Plaintiff states that there were times when he would cut an artery and bleed out close to five pints of blood, using his blood to paint "all four walls with horrifying pictures of demons he claimed [were] attacking him." (*Id.*) Plaintiff would eat his own blood clots while being filmed by staff. (*Id.*) At times, Plaintiff would need a transfusion from the local emergency room. (*Id.*) Despite these occasions, Plaintiff contends that Defendant Harris refused to send him to a more therapeutic program or to the Woodland Center Correctional Facility (WCC)[2] for better mental health management and medication. (*Id.*) Plaintiff accrued steep medical bills from these incidents, causing him undue hardship. (*Id.*) He contends that had Defendant Harris provided proper treatment, he would not have accrued medical debt in the amount of $5,162.23. (*Id.*)

During this time, Defendant Harris refused to honor Plaintiff's right to privacy in his medical information by refusing to pull Plaintiff out of his cell to talk, "setting him up for more teases from snoopers." (*Id.*, PageID.6–7.) Plaintiff contends that he eventually seldom spoke to Defendant Harris because the trust had been "tarnished." (*Id.*, PageID.7.) He asked Defendant Hares to switch him to another individual's caseload to no avail. (*Id.*) Plaintiff contends that

---

[2] WCC houses the MDOC's Inpatient Mental Health and Crisis Stabilization Program. *See* https://www.michigan.gov/corrections/prisons/woodland-center-correctional-facility (last visited Sept. 28, 2022).

Defendant Hares forced him "to have no one to talk to in his time of need." (*Id.*) He alleges further that Defendant Hares forged documents and improperly filled out his assessments without ever conducting a screening of Plaintiff. (*Id.*)

Plaintiff goes on to allege that Defendant Beaudrou recognized that Plaintiff needed a Major Mental Diagnosis (MMD) but took that diagnosis away from him. (*Id.*) Plaintiff contends that had he been classified as an MMD, he would have been eligible for the START program at MBP "where inmates are monitored, earn [privileges], and have open-setting groups." (*Id.*) He avers that the removal of the MMD diagnosis together with prescribing the wrong medication took away his "chances at a more therapeutic environment that at the time is still needed." (*Id.*)

Based on the foregoing, Plaintiff asserts that Defendants violated his Eighth Amendment rights. (*Id.*, PageID.11–13.) He also asserts that Defendants violated MDOC policy. (*Id.*) Plaintiff also asserts state law claims of negligence, intentional infliction of emotional distress, medical malpractice, and violations of the Mental Health Code Act 258 of 1974 against Defendants Hares, Harris, and Beaudrou. (*Id.*, PageID.1, 11–13.) Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.13–14.)

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

  **A.**  **Claims Pursuant to § 1983**

    **1.**  **Claims Against the MDOC and the MDOC Mental Health Services**

As noted *supra*, Plaintiff has named both the MDOC and the MDOC Mental Health Services department as Defendants in this matter. Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, neither the State of Michigan nor the MDOC (including its Mental Health Services department) is a "person" within the meaning of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58

(1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

Moreover, even if the MDOC or the State of Michigan were "persons" under § 1983, Plaintiff's claim would be properly dismissed because the MDOC and the State of Michigan are immune from suit under the Eleventh Amendment. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

For these reasons, Plaintiff cannot maintain his claims against the MDOC and its Mental Health Services department. Accordingly, the Court will dismiss these entities as Defendants.

### 2. Official Capacity Claims

Plaintiff names the individual Defendants in both their official and individual capacities. (ECF No. 1, PageID.1.) Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will*, 491 U.S. at 71; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

As discussed above, the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. Here, Plaintiff seeks monetary damages, as well as unspecified declaratory and injunctive relief. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff, however, is no longer confined at MBP, where he avers that the individual Defendants are employed. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's claims for declaratory and injunctive

relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying this rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiff is now incarcerated at LRF, and the individual Defendants are not employed at that facility. Plaintiff, therefore, cannot maintain claims for declaratory and injunctive relief against the individual Defendants, and such claims will be dismissed.[3]

### 3. Individual Capacity Claims

#### a. Eighth Amendment

##### i. Verbal and Sexual Harassment

Plaintiff appears to suggest that Defendant Harris violated his Eighth Amendment rights by verbally and sexually harassing him. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous;" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*,

---

[3] To the extent Plaintiff seeks declaratory and injunctive relief against Defendants in their individual capacities, such claims will also be dismissed for the reasons set forth above.

452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Plaintiff alleges that on May 20, 2020, he had a meeting with Defendants Harris and Hares. (ECF No. 1, PageID.4–5.) Defendant Harris waited for Defendant Hares to be "out of earshot" and then told Plaintiff, "You are a f***ing crybaby and if you need any favors in the future [you are] gonna have to eat my d*** for it!" (*Id.*, PageID.5.) Plaintiff became suicidal and eventually attempted suicide after being taunted and teased from inmates who overheard Defendant Harris's comment. (*Id.*) Plaintiff had previously confided in Defendant Harris that he is bisexual and "strongly feels [that is] what motivated that aggressive sexual advance." (*Id.*) While Defendant Harris's comment was unaccompanied by any touching, Plaintiff's complaint sets forth that Defendant Harris was aware of Plaintiff's severe mental issues. Moreover, Plaintiff has alleged that he experienced pain because he attempted suicide after being taunted and teased because of Defendant Harris's comment. Given these allegations, the Court concludes that Plaintiff has set forth an Eighth Amendment verbal and sexual harassment claim against Defendant Harris.

### ii.     Denial of Adequate Mental Health Care

Throughout his complaint, Plaintiff avers that Defendants Hares, Harris, and Beaudrou provided inadequate mental health care to him during his incarceration at MBP. The Eighth

Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment requires prison officials to provide medically necessary mental health treatment as well. *See id.* at 103; *Government of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at * 2 (6th Cir. April 26, 1985). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically

13

serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

15

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In his complaint, Plaintiff acknowledges that while at MBP, he was in the SSOTP program and was prescribed Geodone to temper the voices he heard in his head. Throughout the complaint, however, Plaintiff includes numerous allegations suggesting that these treatment methods were not sufficient. He avers that Defendant Harris ignored his concerns and aggravated his suicidal tendencies by speaking to him—including verbally and sexually harassing him—in an area where other inmates could overhear. He tried to speak to Defendant Hares about his issues with Defendant Harris but was rebuffed. Plaintiff also contends that Defendant Hares falsified his mental health paperwork by not conducting required screenings. He suggests that Defendant Beaudrou took away his MMD designation, preventing him from participating in the START Program at MBP, and that he prescribed medication that did not help because he continued to hear voices in his head. Throughout his complaint, Plaintiff alleges that he attempted suicide on numerous occasions, and that he lost so much blood from some of the attempts that he had to be transported to the emergency room for a transfusion. While Plaintiff has by no means proven deliberate indifference at this time, taking these facts in the light most favorable to him, the Court concludes that he has sufficiently stated Eighth Amendment claims for deliberate indifference to serious mental health needs against Defendants Hares, Harris, and Beaudrou.

### b. Violations of MDOC Policy

Plaintiff also suggests that Defendants Hares, Harris, and Beaudrou violated MDOC policy. Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts, however, have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegation that Defendants violated MDOC policy and procedure, therefore, fails to raise a cognizable federal constitutional claim.

### B. State Law Claims

Plaintiff asserts state law claims of negligence, intentional infliction of emotional distress, medical malpractice, and violations of the Mental Health Code Act 258 of 1974. (*Id.*, PageID.1, 11–13.) As discussed above, however, Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983. *See Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166.

Moreover, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of

multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff continues to have pending federal claims against Defendants Hares, Harris, and Beaudrou, the Court will exercise supplemental jurisdiction over his state law claims against them.

## Conclusion

For the reasons discussed above, the Court will deny as premature Plaintiff's motion for discovery. (ECF No. 7.) Plaintiff's motion for an extension of time to file an amended or supplemental complaint (ECF No. 8) will be denied without prejudice to Plaintiff's right to initiate a new lawsuit, should he wish to do so, raising his claims regarding the use of soft restraints on March 19, 2022. Finally, Plaintiff's motion to amend (ECF No. 10) will be granted to amend the docket to reflect the full names of the individual Defendants.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants MDOC and MDOC Mental Health Services will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Hares, Harris, and Beaudrou: (1) Plaintiff's official capacity claims; (2) Plaintiff's claims for declaratory and injunctive relief against Defendants in their individual capacities; and

(3) Plaintiff's claims for violations of MDOC policy. The following claims remain in the case: (1) Plaintiff's Eighth Amendment verbal and sexual harassment claim against Defendant Harris; (2) Plaintiff's Eighth Amendment claims against Defendants Hares, Harris, and Beaudrou premised upon the denial of adequate mental health treatment; and (3) Plaintiff's state law claims against Defendants Hares, Harris, and Beaudrou.

    An order consistent with this opinion will be entered.

Dated:   October 3, 2022            /s/ Paul L. Maloney
                                                       Paul L. Maloney
                                                       United States District Judge